## In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1330V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| DANIEL MILLIREN, | * | Chief Special Master Corcoran |
| Petitioner, | * | Filed: November 7, 2024 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Bruce Slane*, Law Office of Bruce W. Slane, P.C., White Plains, NY, for Petitioner.

*Heather Pearlman,* U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION DENYING AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On August 30, 2019, Samantha Agar Smith Lowe filed a petition on behalf of her minor son, Daniell Milliren ("Petitioner"),[2] seeking compensation under the National Vaccine Injury Compensation Program ("the Program").[3] Petitioner alleged that he suffered injuries from a meningococcal vaccine he received on September 1, 2016. Petition, (ECF No. 1) at 1.

The matter was dismissed by motion of the parties in March 2023, but there remained an unresolved motion for attorney's fees and costs filed before the claim's cessation. For the reasons

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] On May 26, 2022, Mr. Milliren, who had recently reached the age of majority, was substituted as Petitioner. (ECF No. 80).

[3] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

set forth below, I hereby deny a fees award in this case, based on my determination that the claim lacked reasonable basis.

## I. Procedural History

The claim began as a *pro se* matter, but not long after its filing, Attorney Bruce Slane appeared in September 2019. (ECF No. 7). It was originally assigned to a different special master. On March 25, 2021, and after many months had been spent in records collection, Attorney Slane filed a motion to withdraw (ECF No. 44) after Petitioner terminated their attorney-client relationship. That motion was granted in April 2021. (ECF No. 48). Two years later, new counsel appearing for Petitioner moved for dismissal, and the case was concluded in March 2023. (ECF No. 91).

Before the question of withdrawal was resolved, Attorney Slane had filed an application for Interim Attorneys' Fees, requesting $32,054.93 in fees and costs incurred since his appearance in September 2019. Fees Motion, (ECF No. 46) ("Fees Mot."). Respondent, however, argued that the case lacked reasonable basis, and requested that resolution of the motion be deferred until the case concluded. Opposition, (ECF No. 50) ("Opp."). Attorney Slane later filed a reply in support of his fees request on May 24, 2021. Reply, (ECF No. 55) ("Reply"). The special master to whom the matter had been assigned never took formal action on the motion, and after her departure from the Office of Special Masters, the case was reassigned to me to decide the pending motion. (ECF. No. 95).

## II. Parties' Arguments

The Fees Motion briefly addresses anticipated good faith and reasonable basis objections to the claim, noting that Petitioner's mother "genuinely believed [Petitioner] sustained an adverse reaction to the September 1, 2016 Menactra vaccination," and contending that this belief was corroborated by the medical records and "compelling evidence." Fees Mot. at 4-5.

In reaction, Respondent maintains that no fees award is appropriate. He argues that Petitioner "has not filed more than a scintilla of objective evidence" in support of his claim. Opp. at 5. The record reveals that no providers diagnosed Petitioner with his alleged injuries – acute encephalopathy, a seizure condition, or a movement disorder. *Id.* Petitioner underwent six EEGs and none showed any evidence of seizures or brain abnormalities that would explain Petitioner's "seizure-like events." *Id.* Furthermore, Petitioner was seen by seven neurologists and none concluded he was suffering from a seizure condition or a neurological condition. *Id.* Instead, Petitioner was diagnosed with "pseudo seizures" – seizures that are voluntary/psychiatric in origin. *Id.* Petitioner's primary care physician stated there was "no way" the vaccination caused Petitioner's symptoms, and most providers believed that Petitioner's symptoms were voluntary and stress induced. *Id.* at 6. Finally, Respondent notes that Petitioner had a lengthy history of seizure-like symptoms before he received the vaccine. *Id.* at 7.

2

Petitioner's Reply lists medical record evidence that he contends provide objective support for the claim. Reply at 2. For example, the Reply points to a notation from a September 4, 2016 visit with a treater (not long after vaccination) that included "motor tic disorder [and] vaccine reaction" as the assessment. *Id.* (citing Ex. 15 at 170-71). He also offers a letter dated April 10, 2017, from another treater that states "[w]e do not feel that [Petitioner] is suffering from seizures, but more that he is having something known as Dissociative Convulsions, along with fatigue, and sleep disorder as a result of the immunization." *Id.* (citing Ex. 17 at 25). Finally, Petitioner lists medical records that state he was undergoing an "investigation" for some sort of neurological disorder or abnormality. *Id.* (citing Ex. 15 at 153, 155). According to Petitioner, these records reveal a belief from medical providers that Petitioner suffered from an adverse reaction to the vaccine. Thus, Petitioner contends he had reasonable basis to bring the claim. *Id.* at 3.

## I.  Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that in the Vaccine Program, attorney's fees and costs may be awarded even for unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs in the majority of cases.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or Court of Federal Claims may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis (the second component of this test)[4] is thus a threshold requirement for a fees award for unsuccessful cases (although establishing it does not automatically *permit* an award, as special masters are still empowered by the Act to deny or limit fees). *James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir.

---

[4] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (*quoting Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained that this analysis "is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Wirtshafter,* 155 Fed. Cl. at 671. Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham* II*")*, *aff'd without op.*, *slip op.* 22-1737 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham* II, 159 Fed. Cl. at 333 (citing *Cottingham* I, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis which may have existed when a claim was initiated can later cease to exist, as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## ANALYSIS

Here, it is evident from the totality of medical record evidence filed in this case that the claim lacked reasonable basis. The medical records established no cognizable vaccine injury of any kind, nor any contemporaneous treater views or diagnoses that would support the claim. And

4

this is a determination that counsel could have reached at the outset of his representation of Petitioner.

Petitioner claims to have suffered from "acute encephalopathy with permanent convulsive movement disorder, bilateral leg weakness, and other neurologic dysfunction" as a result of the vaccine. Petition at 1. The medical records provided by Petitioner set forth a variety of alleged symptoms, including crying, fatigue, leg weakness, sneezing type tics, difficulty breathing, muscle contraction, and loss of awareness. Reply at 2 (citing Ex. 15 at 170-71; Ex. 17 at 20). But the records do not include any *official diagnoses* consistent with these alleged injuries. Thus, the records are deficient in supporting the injuries alleged. Or the records only memorialize complaints Petitioner made about his condition, rather than evidence that his symptoms were witnessed or confirmed by third parties. Thus, a notation in a May 8, 2018 record states that Petitioner was concerned about weakness in his legs (Ex. 17 at 20), but none of Petitioner's providers actually *observed* any true or significant leg weakness. *See, e.g.*, Ex. 10 at 1; Ex. 15 at 78, 112.

In response, Petitioner cherry-picks helpful references from the medical records. He offers a few notations from doctors' visits that list "motor tic disorder" and "Dissociative Convulsions" as possible diagnoses. Ex. 15 at 170-71; Ex. 17 at 25. He also points to two records from November 2016 that state that Petitioner was under investigation for some kind of neurologic disorder. Ex. 15 at 153, 155. He references a notation from September 4, 2016, in which a treater documents a "vaccine reaction." Ex. 15 at 170-71. And he offers an April 2017 letter from another treater, stating that "[w]e do not feel that [Petitioner] is suffering from seizures, but more that he is having something known as Dissociative Convulsions, along with fatigue, and sleep disorder as a result of the immunization." Ex. 17 at 25.

But a thorough review of the medical records reveals that this "evidence" of a neurologic and/or convulsive disorder barely amounts to a scintilla when weighed against the rest of the record evidence. Thus, as Respondent notes, no medical provider ever diagnosed Petitioner with acute encephalopathy, or any kind of seizure disorder. Opp. at 5. Petitioner's six EEG's provided no evidence of seizures or brain activity that would explain his "seizure-like events." *See, e.g.*, Ex. 15 at 510; Ex. 17 at 9, 32-33; Ex. 18 at 37; Ex. 32 at 10; Ex. 33 at 40. Petitioner was seen by several neurologists, and none concluded that he was suffering from a seizure condition. *See, e.g.*, Ex. 26 at 13; Ex. 17 at 25.

In addition, the records contain an alternative explanation for Petitioner's presentation. Petitioner's treaters ultimately determined that his symptoms were voluntary and psychiatric in nature. *See, e.g.*, Ex. 15 at 168; Ex. 16 at 186; Ex. 17 at 28. Dr. Gearing opined that Petitioner's "seizure-like activity" could be stress induced (Ex. 10 at 1) and speculated that the "shaking episodes are a way [for Petitioner] to avoid school." Ex. 15 at 52. Thus, the bulk of the medical records reveal that several of Petitioner's treating physicians were confident that his symptoms

were voluntary and psychological (and therefore not a result of the vaccine). *See, e.g.*, Ex. 15 at 168; Ex. 16 at 186; Ex. 17 at 28; Ex. 19 at 52; Ex. 26 at 8, 14. In fact, Petitioner's primary care physician clearly stated that he "in no way" believed that the vaccine caused Petitioner's symptoms. Ex. 19 at 52.

Overall, then, the record establishes that Petitioner was never formally diagnosed with any of the injuries he alleges and obtained no medical treatment corroborating the reality of his symptoms. Furthermore, there is overwhelming evidence of an alternative explanation for his symptoms – greatly outweighing the subjective beliefs of Ms. Lowe that a vaccine injury may have occurred. Under such circumstances, a finding of an absence of reasonable basis is appropriate. The subjective good faith of Petitioner's counsel in taking Ms. Lowe at her word does not bear on the inquiry of whether the claim had reasonable basis to begin with. As I explained in *Cortez*, "[c]ounsel still [has] a duty to investigate a Program claim even if they reasonably find their client to be a credible individual." *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). This claim should not have been asserted – and a review of the evidence before counsel's appearance[5] would have made that clear.

As I have noted in prior cases, it is reasonable to put the onus on counsel to determine whether a claim is appropriately filed – and the concomitant risk that they will be denied fees if a claim is later found to lack reasonable basis. *See Curran v. Sec'y of Health & Hum. Servs.*, No. 15-804V, 2017 WL 1718791, at *4 (Fed. Cl. Spec. Mstr. Mar. 24, 2017). The Program has one of the most generous fee shifting statutes possible, resulting in payment of fees in numerous losing cases. When a claim so obviously lacks reasonable basis, it is fair to deny fees (and hopefully counsel will in future matters take more care before throwing in with a facially-deficient matter).

**Conclusion**

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

---

[5] I also note that counsel appeared *after* the claim was filed and was thus under no pressure to "beat" a looming statute of limitations by advancing a claim he had not had time to review. He could have looked more at the claim first. And in any event, the Court of Federal Claims has firmly established that an attorney's need to expedite filing of a case, before review of its underpinnings can be conducted, is a subjective consideration that is not properly taken into account when evaluating the existence of *objective* evidence supporting reasonable basis. *See Simmons*, 875 F.3d at 636.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.